UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALEXIS RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>v.<br><br>ASURION, LLC | Case No. _____<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1. Like many other companies across the United States, Asurion's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Asurion's organization.

3. As a result, Asurion's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Alexis Rodriguez is one such Asurion worker.

5. Asurion could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Asurion used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Asurion pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Asurion made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Asurion's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. § 95-25.1 *et seq.*

10. Rodriguez brings this lawsuit to recover these unpaid overtime wages and other damages owed by Asurion to her and Asurion's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Asurion's decision to make its own non-exempt employees workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by Asurion to all these workers, along with the penalties, interest, and other remedies provided by federal and North Carolina law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Asurion is headquartered in this District.

## PARTIES

15. **Plaintiff Alexis Rodriguez** is a natural person.

16. Rodriguez was, at all relevant times, an employee of Asurion.

17. Rodriguez has worked for Asurion since August 2021.

18. Rodriguez worked for Asurion in North Carolina.

19. Rodriguez represents at least two groups of similarly situated Asurion workers.

20. Rodriguez represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Asurion (including its subsidiaries and alter egos), who worked for Asurion in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

21. Rodriguez represents a class of similarly situated workers under North Carolina law pursuant to Federal Rule of Civil Procedure 23. This "North Carolina Class" is defined as:

> **All current or former non-exempt employees of Asurion (including its subsidiaries and alter egos) who worked for Asurion in North Carolina at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

23. **Defendant Asurion, LLC ("Asurion")** is a foreign limited liability company.

24. Asurion is headquartered in this District.

25. Asurion may be served by service upon its registered agent, **National Registered Agents, Inc., 300 Montvue Rd., Knoxville, TN 37919-5546**, or by any other method allowed by law.

26. At all relevant times, Asurion exerted operational control over its subsidiaries and alter egos.

27. At all relevant times, Asurion substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

28. At all relevant times, Asurion had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

29. Asurion's subsidiaries and alter egos include ubreakifix.

30. Asurion employed and/or jointly employed, with its subsidiaries and alter egos, Rodriguez and the Similarly Situated Workers.

31. Asurion and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

32. Asurion and its respective subsidiaries and alter egos are joint employers for purposes of North Carolina law.

33. Throughout this Complaint, Asurion and its subsidiaries and alter egos are referred to jointly as "Asurion."

## COVERAGE UNDER THE FLSA

34. At all relevant times, Asurion was an employer of Rodriguez within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35. At all relevant times, Asurion was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. Asurion was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

37. During at least the last three years, Asurion has had gross annual sales in excess of $500,000.

38. Asurion was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

39. Asurion employs many workers, including Rodriguez, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

40. The goods and materials handled, sold, or otherwise worked on by Rodriguez, and other Asurion employees and that have been moved in interstate commerce include, but are not limited to, telephones, computers, and office supplies and equipment.

## FACTS

41. Asurion provides insurance, repair, installation, and support services for electronics.

42. Asurion employs over 23,000 workers. Asurion, About Us, https://www.asurion.com/about/ (last visited Apr. 12, 2022).

43. Many of Asurion's employees are non-exempt hourly and salaried workers.

44. Since at least 2021, Asurion has used timekeeping software and hardware operated and maintained by Kronos.

45. On or about December 11, 2021, Kronos was hacked with ransomware.

46. The Kronos hack interfered with the ability of its customers, including Asurion, to use Kronos's software and hardware to track hours and pay employees.

47. Since the onset of the Kronos hack, Asurion has failed to keep accurate track of the hours that Rodriguez and Similarly Situated Workers have worked.

48. Instead, Asurion has used various methods to estimate the number of hours Rodriguez and Similarly Situated Workers work in each pay period.

49. For example, Asurion issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

50. As a result of Asurion's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

51. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

52. Rodriguez is one of the thousands of employees affected by these pay and timekeeping practices.

53. Instead of paying Rodriguez for the hours she actually worked (including overtime hours), Asurion simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Rodriguez's actual hours worked and regular pay rates, in multiple workweeks.

54. In some instances, Rodriguez was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times her agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

55. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

56. Asurion knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

57. Asurion knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

58. Asurion could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

59. Instead of accurately tracking hours and paying employees their overtime, Asurion decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

60. Even to the extent it did pay some overtime to affected employees, Asurion failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Asurion did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

61. It was feasible for Asurion to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

62. But it chose not to do that.

63. In other words, Asurion pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to

those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

64. Rodriguez is just one of the many Asurion employees who had to shoulder the burden of this decision by Asurion.

65. Rodriguez was a non-exempt hourly employee of Asurion.

66. Rodriguez regularly worked over 40 hours per week for Asurion.

67. Rodriguez's normal, pre-Kronos hack hours are reflected in Asurion's records.

68. Since the Kronos hack, Asurion has not paid Rodriguez for her actual hours worked each week.

69. Since the hack took place, Asurion has not been accurately recording the hours worked by Rodriguez and its other workers.

70. Even when Asurion has issued payment to Rodriguez for any overtime, the overtime is not calculated based on Rodriguez's regular rates, as required by federal law.

71. Asurion was aware of the overtime requirements of the FLSA.

72. Asurion nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Rodriguez.

73. Asurion's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

74. The full overtime wages owed to Rodriguez and the Similarly Situated Workers became "unpaid" when the work for Asurion was done—that is, on Rodriguez and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th

Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

75. At the time Asurion failed to pay Rodriguez and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Asurion became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

76. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

77. Even if Asurion made any untimely payment of unpaid wages due and owing to Rodriguez or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

78. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

79. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Asurion's acts and omissions resulting in the unpaid wages in the first place.

80. Rodriguez and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Asurion under federal law.

COLLECTIVE ACTION ALLEGATIONS

81. Rodriguez incorporates all other allegations.

82. Numerous individuals were victimized by Asurion's patterns, practices, and policies, which are in willful violation of the FLSA.

83. Based on her experiences and tenure with Asurion, Rodriguez is aware that Asurion's illegal practices were imposed on the FLSA Collective.

84. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

85. These employees are victims of Asurion's respective unlawful compensation practices and are similarly situated to Rodriguez in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

86. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

87. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

88. Asurion's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

89. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

90. Rodriguez incorporates all other allegations.

91. The illegal practices Asurion imposed on Rodriguez were likewise imposed on the North Carolina Class members.

92. Numerous other individuals who worked for Asurion were were not properly compensated for all hours worked, as required by North Carolina law.

93. The North Carolina Class is so numerous that joinder of all members of the class is impracticable.

94. Asurion imposed uniform practices and policies on Rodriguez and the North Carolina Class members regardless of any individualized factors.

95. Based on his experience and tenure with Asurion, as well as coverage of the Kronos hack, Rodriguez is aware that Asurion's illegal practices were imposed on the North Carolina Class members.

96. North Carolina Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

97. Asurion's failure to pay wages and overtime compensation in accordance with North Carolina law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the North Carolina Class members.

98. Rodriguez's experiences are therefore typical of the experiences of the North Carolina Class members.

99. Rodriguez has no interest contrary to, or in conflict with, the members of the North Carolina Class. Like each member of the proposed class, Rodriguez has an interest in obtaining the unpaid wages and other damages owed under the law.

100. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

101. Absent this action, many North Carolina Class members likely will not obtain redress of their injuries and Asurion will reap the unjust benefits of violating North Carolina law.

102. Furthermore, even if some of the North Carolina Class members could afford individual litigation against Asurion, it would be unduly burdensome to the judicial system.

103. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

104. The questions of law and fact common to each of the North Carolina Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the North Carolina Class members were not paid overtime at 1.5x their regular rate of pay for hours worked in excess of 40 in a workweek; and

   b. Whether Asurion's failure to pay overtime at the rates required by law violated the NCWHA.

105. Rodriguez's claims are typical of the North Carolina Class members. Rodriguez and the North Carolina Class members have all sustained damages arising out of Asurion's illegal and uniform employment policies.

106. Rodriguez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

107. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## First Cause of Action—Overtime Violations of the FLSA as to Rodriguez and the FLSA Collective

108. Rodriguez incorporates each other allegation.

109. By failing to pay Rodriguez and the FLSA Collective members overtime at 1.5 times their regular rates, Asurion violated the FLSA. 29 U.S.C. § 207(a).

110. Asurion owes Rodriguez and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

111. Asurion owes Rodriguez and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

112. Likewise, Asurion owes Rodriguez and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

113. Asurion knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

114. Because Asurion knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Asurion owes these wages for at least the past three years.

115. Asurion's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

116. Because Asurion's decision not to pay overtime was not made in good faith, Asurion also owes Rodriguez and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

117. Accordingly, Rodriguez and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE NCWHA
### AS TO RODRIGUEZ AND THE NORTH CAROLINA CLASS

118. Rodriguez incorporates all other allegations.

119. The conduct alleged in this Complaint violates the NCWHA, N.C. Gen. Stat. § 95-25.1 *et seq.*

120. At all relevant times, Asurion has been an "employer" within the meaning of the NCWHA. N.C. Gen. Stat. § 95-25.2(5).

121. At all relevant times, Asurion employed Rodriguez and the other North Carolina Class members as "employees" within the meaning of the NCWHA. N.C. Gen. Stat. § 95-25.2(3)-(4).

122. The NCWHA requires an employer like Asurion to pay employees at a rate no less than the minimum wage for each hour worked. N.C. Gen. Stat. § 95-25.3.

123. As a result of Asurion's failure to pay Rodriguez and the North Carolina Class at a rate no less than the minimum wage for all hours worked, Asurion violated the NCWHA.

124. The NCWHA requires an employer like Asurion to pay overtime to all non-exempt employees. N.C. Gen. Stat. § 95-25.14.

125. Rodriguez and the other North Carolina Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. N.C. Gen. Stat. § 95-25.4(a).

126. Within the applicable limitations period, Asurion had a policy and practice of failing to pay proper overtime to the North Carolina Class members for their hours worked in excess of 40 hours per week.

127. As a result of Asurion's failure to pay proper overtime to Rodriguez and the North Carolina Class members for work performed in excess of 40 hours in a workweek, Asurion violated the NCWHA.

128. Likewise, Asurion owes Rodriguez and the North Carolina members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

129. Asurion's acts and omissions constituting its violations of the NCWHA were not undertaken in good faith or with reasonable grounds for believing the acts and omissions were not in violation of the NCWHA.

130. Rodriguez and the North Carolina Class members are entitled to recover their unpaid wages under the NCWHA in an amount equal to 1.5x their regular rates of pay, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the NCWHA. N.C. Gen. Stat. § 95-25.22(a)-(b).

**RELIEF SOUGHT**

Rodriguez prays for judgment against Asurion as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the North Carolina law claims;

    c.    For an order finding Asurion liable for violations of federal wage laws with respect to Rodriguez and all FLSA Collective members covered by this case;

d. For an order finding Asurion liable for violations of North Carolina wage laws with respect to Rodriguez and all North Carolina Class members covered by this case;

e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Rodriguez and all FLSA Collective members covered by this case;

f. For a judgment awarding all unpaid wages, liquidated damages, and penalties under North Carolina wage laws to Rodriguez and all North Carolina Class members covered by this case;

g. For an equitable accounting and restitution of wages due to Rodriguez and all FLSA Collective and North Carolina Class members members covered by this case;

h. For a judgment awarding attorneys' fees to Rodriguez and all FLSA Collective and North Carolina Class members covered by this case;

i. For a judgment awarding costs of this action to Rodriguez and all FLSA Collective and North Carolina Class members covered by this case;

j. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Rodriguez and all FLSA Collective and North Carolina Class members covered by this case; and

k. For all such other and further relief as may be necessary and appropriate.

Dated: April 14, 2022

Respectfully submitted,

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.
Bar No.: 0025871
C. Ryan Morgan, Esq.
Bar No.: 0015527
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email: kimd@forthepeople.com
rmorgan@forthepeople.com
*Trial Attorneys for Plaintiffs*

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**